NOT FOR PUBLICATION

FILED

AUG 1 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEVAS MULTIMEDIA PRIVATE LIMITED,<br><br>                Petitioner-Appellee,<br><br>CC/DEVAS (MAURITIUS) LIMITED; DEVAS MULTIMEDIA AMERICA, INC.; DEVAS EMPLOYEES MAURITIUS PRIVATE LIMITED; TELCOM DEVAS MAURITIUS LIMITED,<br><br>                Appellees-Intervenors,<br><br> v.<br><br>ANTRIX CORP. LTD.,<br><br>                Respondent-Appellant, | No. 20-36024<br><br>D.C. No. 2:18-cv-01360-TSZ<br><br>MEMORANDUM* |
| DEVAS MULTIMEDIA PRIVATE LTD.,<br><br>                Petitioner-Appellant,<br><br> v.<br><br>CC/DEVAS (MAURITIUS) LTD; TELCOM DEVAS MAURITIUS LIMITED; DEVAS MULTIMEDIA AMERICA, INC.; DEVAS EMPLOYEES MAURITIUS PRIVATE | No. 22-35085<br><br>D.C. No. 2:18-cv-01360-TSZ |

---

      * This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

LIMITED,

    Intervenor-Plaintiffs-Appellees,

v.

ANTRIX CORP. LTD.,

    Respondent.

---

DEVAS MULTIMEDIA PRIVATE LIMITED,

    Petitioner,

and

CC/DEVAS (MAURITIUS) LIMITED; DEVAS MULTIMEDIA AMERICA, INC.; DEVAS EMPLOYEES MAURITIUS PRIVATE LIMITED; TELCOM DEVAS MAURITIUS LIMITED,

    Intervenor-Plaintiffs-Appellees,

v.

ANTRIX CORP. LTD.,

    Respondent-Appellant,

No. 22-35103

D.C. No. 2:18-cv-01360-TSZ

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted June 7, 2023

San Francisco, California

Before: MILLER and KOH, Circuit Judges, and MOLLOY,** District Judge.

These three companion appeals concern an agreement between two Indian corporations: Devas Multimedia Private Ltd. ("Devas") and Antrix Corp. Ltd. ("Antrix"). In the Confirmation Appeal (20-36024), Antrix challenges the district court's orders denying its motion to dismiss and confirming an International Chamber of Commerce ("ICC") arbitration award in favor of Devas. In the Registration Appeals (22-35085 and 22-35103), Antrix and Devas challenge the district court's order granting the motion of CC/Devas (Mauritius) Ltd., Telcom Devas Mauritius Ltd., Devas Employees Mauritius Private Ltd., and Devas Multimedia America, Inc. (collectively "Intervenors") to register the judgment in the Eastern District of Virginia. We hold that the district court erred in exercising personal jurisdiction over Antrix, and we reverse.

1. The district court erroneously concluded that a minimum contacts analysis was unnecessary to exercise personal jurisdiction over Antrix. Personal jurisdiction over a foreign state in a civil action is governed by the long-arm provision of the Foreign Sovereign Immunities Act ("FSIA"). *See Broidy Cap. Mgmt., LLC v. State of Qatar*, 982 F.3d 582, 589 (9th Cir. 2020). Under the FSIA,

---

** The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

a foreign state "shall be immune from the jurisdiction of the courts of the United States" unless an enumerated exception applies. 28 U.S.C. § 1604. The FSIA also provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title." 28 U.S.C. § 1330(b). The parties agree that for purposes of the FSIA, Antrix is a "foreign state," service has been made, and an enumerated exception applies.

In *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica* ("*Gonzalez*"), we rejected the plaintiff's argument that the FSIA's long-arm provision changed the minimum contacts analysis for foreign states. 614 F.2d 1247 (9th Cir. 1980). We held that "[t]he legislative history of the Act confirms that the reach of [§] 1330(b) does not extend beyond the limits set by the International Shoe line of cases. Personal jurisdiction under the [FSIA] requires satisfaction of the traditional minimum contacts standard." *Id.* at 1255 (footnote omitted). Since *Gonzalez*, we have continued to apply the rule that personal jurisdiction under the FSIA requires a traditional minimum contacts analysis. *See, e.g.*, *Theo. H. Davies & Co. v. Republic of Marshall Islands*, 174 F.3d 969, 974 (9th Cir. 1998) ("[The FSIA's] long-arm statute, however, is constrained by the minimum contacts required by *International Shoe* . . . and its progeny." (citation omitted)); *Gregorian v. Izvestia*, 871 F.2d 1515, 1529 (9th Cir. 1989) ("[I]f

4

defendants are not entitled to immunity under the FSIA, a court must consider whether the constitutional constraints of the Due Process clause preclude the assertion of personal jurisdiction over them." (emphasis omitted)); *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1446 (9th Cir. 1991) ("Personal jurisdiction under the FSIA is determined by resorting to the traditional minimum contacts tests.").

Devas and Intervenors argue that these precedents have been called into question by the Supreme Court's decision in *Republic of Argentina v. Weltover, Inc.*, in which the Court stated, "Assuming, without deciding, that a foreign state is a 'person' for purposes of the Due Process Clause, . . . we find that Argentina possessed 'minimum contacts' that would satisfy the constitutional test." 504 U.S. 607, 619 (1992) (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 323–24 (1966)). However, our prior precedents are binding unless "the relevant court of last resort [has] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Our prior precedents are not "clearly irreconcilable" with *Weltover* for two reasons. First, *Weltover* left open the question of whether foreign states are persons—and thus entitled to a minimum contacts analysis under the Due Process Clause—and only suggested how the Supreme Court might rule on the issue. Second, the application of the

minimum contacts analysis to actions under the FSIA in *Gonzalez* is statutory rather than constitutional. Rather than relying on a foreign state's personhood, *Gonzalez* relies on a reading of the FSIA's legislative history to conclude that the FSIA was intended to be consistent with the minimum contacts analysis. 614 F.2d at 1255 n.5. It follows that if a foreign state is not a person and thus not entitled to a minimum contacts analysis through the Constitution, it is still entitled to a minimum contacts analysis through our reading of the FSIA.

Thus, the district court erred in ignoring our precedents requiring it to conduct a minimum contacts analysis.

2. The district court also erred in concluding that Antrix has the requisite minimum contacts with the United States. A defendant is subject to specific personal jurisdiction if "(1) the defendant performed an act or consummated a transaction by which it purposely directed its activity toward the forum state; (2) the claims arose out of defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1034–35 (9th Cir. 2023). "The plaintiff has the burden of proving the first two prongs. If he does so, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Picot v. Weston*, 780 F.3d 1206, 1211–12 (9th Cir. 2015) (citation and quotation marks omitted). "Where service is made under FSIA

section 1608, the relevant area in delineating contacts is the entire United States, not merely the forum state." *Richmark*, 937 F.2d at 1447 (cleaned up) (quoting *Meadows v. Dominican Republic*, 817 F.2d 517, 523 (9th Cir. 1987)).

Devas has failed to meet its burden under the first prong to show that Antrix purposefully availed itself of the privilege of conducting activities in the United States. Devas primarily relies on the Antrix and Indian Space Research Organization ("ISRO") Chairman's 2003 visit to Washington D.C. to meet with Forge Advisors and a series of 2009 meetings between ISRO officials and the Devas team. Assuming that ISRO's contacts with the United States may be attributed to Antrix, these meetings are still insufficient because they are not purposeful, but rather "random, isolated, or fortuitous." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)). Indeed, ISRO officials came to the United States in 2009 for "unrelated meetings." The Agreement between Antrix and Devas was negotiated outside of the United States, executed in India in 2005, and did not require Antrix to conduct any activities or create ongoing obligations in the United States. *See, e.g.*, *Picot*, 780 F.3d at 1213 (finding insufficient contacts with California because, although the defendant physically entered California, the trips held "no special place in his performance under the agreement as a whole," especially where the agreement was executed in Michigan

and contemplated obligations largely in Michigan); *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (holding that a contract for sale negotiated in California did not establish minimum contacts in the state because it did not create ongoing obligations in the state); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (finding no minimum contacts when a foreign company made a presentation on a cruise ship in Miami, Florida). Moreover, to the extent that the district court relied on Devas's connections to the United States to justify the exercise of personal jurisdiction over Antrix, this reliance is erroneous because it is the defendant's conduct that must drive the personal jurisdiction analysis, not the plaintiff's. *See Picot*, 780 F.3d at 1212–13 (citing *Walden v. Fiore*, 571 U.S. 277, 289 (2014)).

Thus, the district court erred in holding that Antrix had the requisite minimum contacts for personal jurisdiction.

\* \* \*

Because we hold that the district court erred in exercising personal jurisdiction over Antrix, its judgment is reversed, and we need not address any of the other issues raised in the Confirmation Appeal. Because there is no judgment to register, the district court's order permitting Intervenors to register the judgment in the Eastern District of Virginia is also reversed, and we need not address any of the issues raised by the Registration Appeals.

**REVERSED.**[1]

---

[1] Antrix's motion for a limited remand, **20-36024 Dkt. 72**, is DENIED.  CCDM Holdings, LLC; Telcom Devas, LLC; and Devas Employees Fund US, LLC's motions to intervene, **20-36024 Dkt. 94, 22-35085 Dkt. 44, 22-35103 Dkt. 48**, are DENIED.



*Devas Multimedia Private Ltd. v. Antrix Corp. Ltd.*, Nos. 20-36024+

MILLER, Circuit Judge, with whom KOH, Circuit Judge, joins, concurring:

I join the court's disposition because it correctly applies our precedent that "[p]ersonal jurisdiction under the [Foreign Sovereign Immunities Act] requires satisfaction of the traditional minimum contacts standard." *Thomas P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1255 (9th Cir. 1980). I write separately to make two observations about the origins of the minimum-contacts requirement and the ways in which it can be satisfied.

*First*, although our cases have clearly recognized a minimum-contacts requirement for subjecting foreign states to personal jurisdiction, they have been less clear about the source of that requirement. Some of our cases have suggested that the Due Process Clause requires a minimum-contacts analysis. *See*, *e.g.*, *Gregorian v. Izvestia*, 871 F.2d 1515, 1529 (9th Cir. 1989). I agree with the District of Columbia Circuit, however, that "[n]either the text of the Constitution, Supreme Court decisions construing the Due Process Clause, nor long standing tradition provide a basis for extending the reach of this constitutional provision for the benefit of foreign states." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 99 (D.C. Cir. 2002); *accord Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 694 (7th Cir. 2012); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399 (2d Cir. 2009). "The word 'person' in the

1

context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union." *South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966). It would be even less reasonable to interpret "person" to encompass foreign states. Whereas the 50 States are part of the constitutional compact—they "derive important benefits and must abide by significant limitations as a consequence of their participation"—foreign states are "entirely alien to our constitutional system." *Price*, 294 F.3d at 96. Principles of comity, diplomacy, and international law, including "a panoply of mechanisms in the international arena," protect the interests that foreign states have in resisting the jurisdiction of United States courts. *Id.* at 97–98. The Due Process Clause does not.

As the court explains today, the better reading of our cases is that "the application of the minimum contacts analysis to actions under the FSIA . . . is statutory rather than constitutional." But the statutory theory of a minimum-contacts requirement is little better than the constitutional one. Nothing in the text of the FSIA's long-arm provision describes a minimum-contacts requirement. 28 U.S.C. § 1330(b). To the contrary, that provision says categorically that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title." *Id.* In so doing, it "clearly

2

expresses the decision of the Congress to confer upon the federal courts personal jurisdiction over a properly served foreign state—and hence its agent—coextensive with the exceptions to foreign sovereign immunity in the FSIA," and it imposes no additional limitations. *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 303 (D.C. Cir. 2005).

In sum, our precedent applying the minimum-contacts test to the exercise of personal jurisdiction over foreign states has no foundation in the Constitution or the FSIA, and it is contrary to the views of other courts of appeals. In an appropriate case, we should reconsider it en banc.

*Second*, in most cases involving the enforcement of an arbitral award under the New York Convention, the minimum-contacts requirement will have little practical significance because it can easily be satisfied by the presence of assets in the forum. In *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, we held that, "in suits to confirm a foreign arbitral award under the [New York] Convention," a court may exercise "jurisdiction over the defendant against whom enforcement is sought *or his property*." 284 F.3d 1114, 1122 (9th Cir. 2002) (emphasis added); *see* Restatement (Third) of Foreign Rels. L. § 487 cmt. c. (Am. L. Inst. 1987) ("[A]n action to enforce a foreign arbitral award requires jurisdiction over the award debtor or his property."). We explained that "[c]onsiderable authority" supports the exercise of jurisdiction to enforce an arbitral award against

3

a respondent's forum property "even if that property has no relationship to the underlying controversy between the parties." *Glencore Grain*, 284 F.3d at 1127. And in most cases in which a party is seeking to enforce an arbitral award against a foreign state in the United States, that state will have assets here. (Why else would anyone seek to enforce an award here?)

In response to questioning at oral argument, Intervenors sought to invoke that basis for personal jurisdiction, arguing that Antrix had assets in the United States against which Devas sought to enforce its award. But it is the plaintiff's burden to establish personal jurisdiction, *FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir. 1987), and no party raised this theory in the district court or in the briefing on appeal. Indeed, it appears that Devas did not identify any assets that Antrix had in the United States until after the confirmation of the award. *See Glencore Grain*, 284 F.3d at 1128. Because the argument has been forfeited, the court appropriately declines to consider it today. *See Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1271 (9th Cir. 2022). And I agree with the court that Devas's other efforts to establish minimum contacts are unsuccessful.