**Nos. 20-36024, 22-35103**

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

DEVAS MULTIMEDIA PRIVATE LIMITED,
*Petitioner,*

CC/DEVAS (MAURITIUS) LTD.; DEVAS MULTIMEDIA AMERICA, INC.; DEVAS EMPLOYEES MAURITIUS PRIVATE LIMITED; TELCOM DEVAS MAURITIUS LIMITED,
*Intervenor-Plaintiffs - Appellees,*

v.
ANTRIX CORP. LTD.,
*Respondent - Appellant.*

---

On Appeal from the United States District Court for the Western District of Washington, No. 18-cv-1360
The Honorable Thomas S. Zilly, District Judge

---

## SUPPLEMENTAL BRIEF OF APPELLANT ANTRIX CORP. LTD.

---

Amanda Shafer Berman
Michael Guiffre
Neil Nandi
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
Phone: (202) 624-2500
aberman@crowell.com

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................3

I.     The district court's decision must be overturned
       because there is no longer any arbitration award to
       enforce. ....................................................................................3

II.    The district court lacked subject matter jurisdiction
       under the FSIA's arbitration exception because this
       Indian contract dispute does not involve American
       commerce. .............................................................................11

III.   Jurisdiction cannot be exercised over Antrix consistent
       with the constitutional due process limits applied in
       *Fuld*. ....................................................................................16

CONCLUSION ..................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.,*
480 U.S. 102 (1987) ............................................................... 19

*Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.,*
191 F.3d 194 (2d Cir. 1999) ............................................... 6, 8

*Barapind v. Gov't of Republic of India,*
844 F.3d 824 (9th Cir. 2016)......................................... 12, 19

*Bibiano v. Lynch,*
834 F.3d 966 (9th Cir. 2016)............................................... 10

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.,*
581 U.S. 170 (2017) ......................................................... 13, 14

*CC/Devas (Mauritius) Ltd. V. Antrix Corp. Ltd.,*
145 S. Ct. 1572 (2025)........................................................... 11

*Clark v. Martinez,*
543 U.S. 371 (2005) .............................................................. 21

*Compañia de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.,*
58 F.4th 429 (10th Cir. 2023) ........................................... 8, 9

*Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción,*
832 F.3d 92 (2d Cir. 2016) .......................................... 8, 9, 10

*Corzo v. Banco Cent. de Reserva del Peru,*
243 F.3d 519 (9th Cir. 2001)................................... 5, 6, 7, 17

*Emqore Envesecure Priv. Cap. Tr. v. Singh,*
Civ. No. 20-07324, 2022 U.S. Dist. LEXIS 162039 (D.N.J. Sep. 7, 2022) ........................................................................ 10

ii

*Esso Exploration & Production Nigeria Ltd. v. Nigeria*
  *National Petroleum Corp.*,
  40 F.4th 56 (2d Cir. 2022)................................................................7

*Fuld v. Palestine Liberation Organization*,
  606 U.S. 1 (2025).............................................. 2, 16, 17, 18, 19, 20, 21

*Gater Assets Ltd. v. AO Moldovagaz*,
  2 F.4th 42 (2d Cir. 2021)...............................................................17

*Getma International. v. Republic of Guinea*,
  862 F.3d 45 (D.C. Cir. 2017) ...........................................................7

*Gonzalez v. Thaler*,
  565 U.S. 134 (2012) .....................................................................16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) .....................................................................17

*Mercuria Energy Grp. Ltd v. Republic of Poland*,
  No. 23-cv-03572, 2025 U.S. Dist. LEXIS 174743 (D.D.C.
  Sep. 8, 2025) ..............................................................................5

*Prasad v. Pepsico Inc.*,
  No. 95-55666,1996 U.S. App. LEXIS 29092 (9th Cir. Nov.
  5, 1996) ...................................................................................10

*Siderman de Blake v. Republic of Argentina*,
  965 F.2d 699 (9th Cir. 1992)...........................................................16

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
  487 F.3d 928 (D.C. Cir. 2007) ..................................................... 3, 5, 8

*United States v. Medjuck*,
  48 F.3d 1107 (9th Cir. 1995)...........................................................20

*United States v. Miller*,
  604 U.S. 518 (2025) .....................................................................12

*Verlinden B.V. v. Cent. Bank of Nigeria*,
  461 U.S. 480 (1983) .................................................................12, 16

iii

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
126 F.3d 15 (2d Cir. 1997) ...................................................... 4

**Statutes**

9 U.S.C. § 2 ............................................................................. 12

28 U.S.C. § 1605(a)(6)....................................................... 11, 12

**Other Authorities**

132 Cong. Rec. S.14795 (daily ed. Oct. 2, 1986) ...................... 13

132 Cong. Rec. S.17258 (daily ed. Oct. 18, 1986) ................... 13

*Restatement (Second) of the Foreign Relations Law of the
United States* § 38 ............................................................ 14

## INTRODUCTION

Antrix submits this supplemental brief under the Court's August 25 Order (Dkt. 140). Antrix respectfully requests the Court hold supplemental argument so the parties may discuss these issues and their interplay with issues previously briefed but not decided.

The Supreme Court's decision, which addressed only whether the Foreign Sovereign Immunities Act ("FSIA") requires a minimum contacts analysis, left many issues that this Court must now consider on remand. Several were previously briefed but not decided by this Court, including:

- The arbitral award cannot be confirmed because Antrix did not agree to an ICC arbitration (No. 20-36024, Dkt. 40 ("Op.Br.") 40-49; Dkt. 67 ("Reply") 21-27);

- Separate from the jurisdictional requirements of the FSIA, Antrix is entitled to constitutional due process because it is a foreign company legally separate from India (Op.Br. 22-31; Reply 5-17); and

- This case should be dismissed under the forum non conveniens doctrine (Op.Br. 55-59; Reply 27-30).

Each of those issues requires that this Court again reverse the district court's decision enforcing the arbitral award.[1] But as this Court recognized (Dkt. 140 at 2), additional questions have been raised since the prior briefing that also must be considered: (1) whether the arbitral award can be enforced by U.S. courts after being set aside by the Indian courts; (2) whether U.S. courts have subject matter jurisdiction under the FSIA's arbitration exception to enforce an award from a dispute with no connection to U.S. commerce; and (3) whether exercising federal jurisdiction is consistent with constitutional due process requirements in light of *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025).

The answer to each question is no. For these reasons too, the Court must reverse the decision enforcing an Indian arbitral award against Antrix, an Indian company engaged in an Indian contract dispute.

---

[1] If this Court does not reverse that decision, it must also decide whether the district court was wrong to allow Intervenor-Plaintiffs to register the judgment for Devas in another district. *See* No. 22-35103, Dkt. 13.

## ARGUMENT

**I.  The district court's decision must be overturned because there is no longer any arbitration award to enforce.**

Under Article V(1)(e) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 6, 1958 ("New York Convention"), "an arbitration award does not exist to be enforced . . . if it has been lawfully set aside by a competent authority in the State in which the award was made." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 936 (D.C. Cir. 2007). This indisputably happened here.

On August 29, 2022, the High Court of Delhi in India issued a decision setting aside the award under grounds set forth in the Indian Arbitration Act because, *inter alia,* the arbitral tribunal made contradictory rulings and there was fraud in the formation and management of Devas. *See* Dkt. 72, App. A. On March 17, 2023, an appellate panel of the Delhi High Court affirmed. Dkt. 85, Ex. A, ¶ 111. And on October 6, 2023, the Supreme Court of India dismissed the Devas Employees Fund US LLC's appeal, confirming the set-aside's lawfulness and rendering it final. Dkt. 116, Attach. A. The set-aside judgment was thus the product of a robust, multi-level judicial process that played out where it belonged—in the Indian courts—rendering the award against

3

Antrix a nullity. The district court's judgment confirming the award must be reversed on this basis alone.

There can be no question the Indian courts were best suited to adjudicate the lawfulness of the award, which was rendered in India, through application of Indian law. *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 21 (2d Cir. 1997) ("[A]n action to set aside an international arbitral award . . . is controlled by the domestic law of the rendering state."). And it was Devas that argued the Delhi High Court had exclusive jurisdiction to decide the fate of the arbitral award. ER-34. The Supreme Court of India agreed with Devas. *See* Dkt. 92-4 at 4-5. Now that its preferred court has ruled against it, Devas seeks to dodge that decision. But Devas—which participated fully in the Indian set-aside litigation[2]—should not be permitted to pick and choose which Indian court rulings to respect.

Indeed, Devas previously represented it would abide by the decisions of India's courts, assuring the district court that there was no harm in enforcing the award in the U.S. while Antrix's set-aside petition was pending in India. Devas pledged: "If the ultimate decision in India is

---

[2] *See* Dkt. 72, App. A.

that the award is somehow rescinded, then money is returned." Dkt. 50 at 16:14-17. Devas should be held to its word.

That outcome is not only fair and just, but compelled by a long line of precedent requiring U.S. courts to respect the judgments of their foreign counterparts regarding the lawfulness of foreign arbitral awards. In *TermoRio*, the D.C. Circuit recognized the near totality of the bar on enforcement imposed by a set-aside decision by the competent foreign court, explaining:

> This matter is a peculiarly Colombian affair, concerning a dispute involving Colombian parties over a contract to perform services in Colombia which led to a Colombian arbitration decision. . . . Colombia's highest administrative court is the final expositor of Colombian law, and we are in no position to pronounce the decision of that court wrong.

487 F.3d at 939 (citation modified); *see also Mercuria Energy Grp. Ltd v. Republic of Poland*, No. 23-cv-03572, 2025 U.S. Dist. LEXIS 174743, at \*23 (D.D.C. Sep. 8, 2025) (citing *TermoRio* as "the lodestar" and declining to second guess the "power and authority of the local courts" of Sweden) (citation omitted).

That rule, grounded in principles of comity, was applied by this Court in *Corzo v. Banco Cent. de Reserva del Peru*, 243 F.3d 519 (9th Cir.

2001), where it declined to allow enforcement of a Peruvian judgment that had been set aside by the Peruvian courts because:

> Nothing would be more repugnant to the principle of comity than for United States courts to allow a defendant's assets to be attached to enforce a Peruvian judgment when the highest court of Peru has declared that judgment null and void.

*Id.* at 526.

The same comity considerations are equally present here. This is an Indian dispute, between Indian companies, arbitrated in India under Indian law. The resulting award has been set aside by the Indian court with authority to decide its lawfulness, and that decision affirmed by the Indian Supreme Court. The outcome here can thus be no different. *See also Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194, 196-97 (2d Cir. 1999) (affirming "it would not be proper to enforce a foreign arbitral award . . . when such an award has been set aside by the Nigerian courts," and rebuffing contrary arguments: "It is sufficient answer that the parties contracted in Nigeria that their disputes would be arbitrated under the laws of Nigeria").

Devas and the Intervenors will no doubt argue that the Delhi High Court's decision was incorrect notwithstanding the Supreme Court of India's affirmance. But "[t]hat, however, is not for [U.S. courts] to decide."

6

*Corzo*, 243 F.3d at 526 (also noting: "Even if . . . the Peruvian Supreme Court's orders nullifying its previous judgement were illegal, comity would prevent us from enforcing the original judgement."). As explained in *Esso Exploration & Production Nigeria Ltd. v. Nigeria National Petroleum Corp.*, 40 F.4th 56, 74 (2d Cir. 2022), even if "[q]uestions may reasonably be raised regarding the correctness" of a foreign court's conclusions, "our role . . . is not to second-guess the Nigerian court's substantive determinations made under Nigerian law." Similarly, in *Getma International. v. Republic of Guinea*, 862 F.3d 45, 48 (D.C. Cir. 2017), the D.C. Circuit declined to enforce an award annulled by a court of supranational jurisdiction for Western and Central African States due to claimed improprieties regarding arbitrator fees. The court explained: "[T]here is no dispute that the [court] is 'a competent authority' for purposes of Article V(1)(e). . . . And for reasons of international comity, we have declined to 'second-guess' a competent authority's annulment of an arbitral award absent 'extraordinary circumstances.'" *Id.* (citation modified). Neither should this Court second-guess the Delhi High Court's considered determination that the arbitral award is invalid.

7

As explained by the Second and D.C. Circuits, relying on preeminent arbitration scholar Albert Jan van den Berg, there are sound practical reasons for the prohibition against second-guessing foreign set-aside decisions:

> If a party whose arbitration award has been vacated at the site of the award can automatically obtain enforcement of the awards under the domestic laws of other nations, a losing party will have every reason to pursue its adversary "with enforcement actions from country to country until a court is found, if any, which grants the enforcement."

*Baker Marine*, 191 F.3d at 197 n.2 (citing Albert Jan van den Berg, *The New York Arbitration Convention of 1958: Towards a Uniform Judicial Interpretation* 355 (1981)); *see also TermoRio*, 487 F.3d at 936 (also citing van den Berg). "[P]ursu[ing] its adversary . . . from country to country" (*id.*) looking for courts that will enforce the award is precisely what Devas and Intervenors are doing.

Only twice has a decision of a foreign court setting aside an arbitral award been found so "repugnant to the fundamental notions of what is decent and just" that a federal appeals court has declined to honor that decision. *See Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92 (2d Cir. 2016) ("*Pemex*"); *Compañia de Inversiones Mercantiles S.A. v. Grupo*

8

*Cementos de Chihuahua S.A.B. de C.V.* ("*Compañia*"), 58 F.4th 429 (10th Cir. 2023). Both cases involved obvious injustice and malfeasance, arising from circumstances that do not compare to those here.

In *Pemex*, the Second Circuit affirmed a decision declining to honor a Mexican court's set-aside of an award for a U.S. company whose assets were expropriated, and where the Mexican legislature retroactively changed the statute of limitations and barred arbitration even while it was ongoing. 832 F.3d at 97-100. Relying on the "repugnancy" of retroactive legislation and the "prohibition against government expropriation," the Court declined to honor the Mexican court's set-aside decision. *Id.* at 107. But even then, it admonished that "[a]ny court should act with trepidation and reluctance in enforcing an arbitral award that has been declared a nullity by the courts having jurisdiction[.]" *Id.* at 111. There are no similar circumstances that could justify overcoming that reluctance here.

In *Compañia*, the Tenth Circuit affirmed the denial of a motion to vacate an award confirmation despite the award's annulment by Bolivia's highest constitutional court, because, *inter alia*, that award previously had been upheld by a different chamber of the same court. 58 F.4th at

9

438-444, 460. Again, no similar circumstances are present here: the judicial review process in India proceeded in the normal course, beginning in the court that Devas argued was the competent forum and culminating in affirmation by the Indian Supreme Court.

In short, the "high and infrequently met" (*Pemex,* 832 F.3d at 106 (citation modified)) standard for declining to respect a foreign set-aside decision cannot be met here. The Indian courts are competent, fully functional, and organized in accordance with basic principles of justice and due process. *See Prasad v. Pepsico Inc.*, No. 95-55666,1996 U.S. App. LEXIS 29092, at *6 (9th Cir. Nov. 5, 1996); *Emqore Envesecure Priv. Cap. Tr. v. Singh,* Civ. No. 20-07324, 2022 U.S. Dist. LEXIS 162039, at *19 (D.N.J. Sep. 7, 2022) (India is "***a country with an advanced legal system***") (emphasis added). The outcome should be no different here.

This Court therefore should hold that the Indian courts' set-aside decision renders the arbitral award unenforceable. That, in turn, would appropriately avoid the difficult jurisdictional and constitutional issues that otherwise must be decided. *See Bibiano v. Lynch,* 834 F.3d 966, 970 n.4 (9th Cir. 2016) ("Courts may avoid a difficult jurisdictional issue . . . by deciding some other, non-merits threshold issue.").

10

**II.** **The district court lacked subject matter jurisdiction under the FSIA's arbitration exception because this Indian contract dispute does not involve American commerce.**

Before the Supreme Court, Antrix argued that "the claims at issue . . . do not fall within the FSIA's arbitration exception, properly conceived." *CC/Devas (Mauritius) Ltd. V. Antrix Corp. Ltd.*, 145 S. Ct. 1572, 1582 (2025). The Supreme Court did not decide this issue but declared: "Antrix is welcome to litigate these contentions on remand consistent with principles of forfeiture and waiver." *Id.* Antrix does so now. Because this dispute has no connection to U.S. commerce, the Court lacks jurisdiction and must dismiss.

The FSIA's arbitration exception lists four circumstances under which sovereign immunity is waived for purposes of compelling arbitration or confirming an award: (1) arbitrations intended to take place in the United States; (2) agreements governed by treaties regarding arbitration to which the United States is a party; (3) claims that could have been brought in a U.S. court under Sections 1605 or 1607 of the FSIA; or (4) when the foreign sovereign has otherwise waived immunity. 28 U.S.C. § 1605(a)(6). But an important threshold requirement applies to all four: the action must "concern[] a subject matter capable of

11

settlement by arbitration under the laws of the United States." *Id.* Federal statutory and case law, legislative history, and international law establish that this language means that only disputes concerning commerce within or with the United States are subject to the FSIA's arbitration exception.

Under the Federal Arbitration Act ("FAA"), an arbitration clause in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable." 9 U.S.C. § 2. But the FAA defines "commerce" to encompass only commerce within or "with" the United States, or "between" the United States and a "foreign nation." *Id.* § 1.

Case law similarly requires a U.S. nexus for subject matter jurisdiction to lie under the FSIA. The Supreme Court has recognized that all the FSIA exceptions require "some form of substantial contact with the United States." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 490 (1983). This comports with the broader principle that "waivers of sovereign immunity are to be read *narrowly*." *United States v. Miller*, 604 U.S. 518, 533 (2025) (quotation marks and citation omitted); *Barapind v. Gov't of Republic of India*, 844 F.3d 824, 829 (9th Cir. 2016)

12

("The waiver exception [in the FSIA] is narrowly construed.") (citation omitted).

A nexus to U.S. commerce is exactly what Congress intended when enacting the FSIA's arbitration exception. Congress knew that American businesses depended on arbitration agreements to achieve "objectivity and fairness" in disputes with foreign sovereigns. *Hearing Before the Subcomm. on Admin. Law & Governmental Rel. of the Comm. on the Judiciary*, 100th Cong. 201 (1987) (statement of Monroe Leigh). Congress therefore adopted the arbitration exception to "allow U.S. courts to help Americans engaged in international business to have their fair day in court." 132 Cong. Rec. S.14795 (daily ed. Oct. 2, 1986) (statement of Sen. Lugar). "By preventing a foreign government from invoking the sovereign immunity defense," the FSIA could better "secure the safety of U.S. companies' interests abroad." 132 Cong. Rec. S.17258 (daily ed. Oct. 18, 1986) (statement of Sen. Mathias). As such, "[a]lmost all the exceptions involve commerce or immovable property located in the United States." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 180 (2017).

13

Requiring a connection to U.S. commerce to waive sovereign immunity also allows the United States to exercise jurisdiction in a manner consistent with international law. That was the State Department's express goal when drafting the FSIA. *See id.* at 181 (FSIA was "drafted keeping in mind what we believe to be the general state of the law internationally"). This prevents U.S. law from being improperly extended beyond normal territorial bounds absent a clear Congressional choice. *See Restatement (Second) of the Foreign Relations Law of the United States* § 38 ("Rules of United States statutory law . . . apply only to conduct occurring within, or having effect within, the territory of the United States, unless the contrary is clearly indicated by the statute.").

In turn, the United States' treaties with foreign nations also limit the enforceability of arbitral awards to those with a connection to the country where they are being enforced. *See* New York Convention, art. II(1), III (obligating contracting states to "recognize" and "enforce" only those arbitration agreements and awards that "concern[] a subject matter capable of settlement by arbitration"); Inter-American Convention on International Commercial Arbitration, art. V(2), (Jan. 30, 1975) ("Panama Convention") (providing that "the State in which the

14

recognition and execution" of an arbitral award "is requested" may refuse if "the subject of the dispute cannot be settled by arbitration under the law of that State").

The legal edifice on which recognition of arbitral awards is built thus limits, at every level—statutory, decisional, and international—the obligation and authority to do so to awards connected to the forum State.

Here, this dispute does not involve commerce between or among any U.S. state and either another state or a foreign state. Rather, as this Court previously recognized in language undisturbed by the Supreme Court, it concerns only purely foreign commerce among Indian entities. Dkt. No. 105-1 at 7 ("The Agreement between Antrix and Devas was negotiated outside of the United States, executed in India in 2005, and did not require Antrix to conduct any activities or create ongoing obligations in the United States."). Lacking any connection to U.S. commerce that would render that dispute subject to resolution in the U.S., the arbitral award cannot be enforced against Antrix via the FSIA's arbitration exception.

Finally, this Court should reject any waiver argument. *First*, whether a FSIA exception applies is a question of subject matter

15

jurisdiction. *See Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 706 (9th Cir. 1992). "Subject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). *Second*, Antrix has consistently challenged federal court jurisdiction under the FSIA— lack of jurisdiction was this Court's basis for reversing the district court before. Dkt. 105-1 at 8. Because Ninth Circuit law was definitive on that point prior to the Supreme Court's decision, Antrix previously had no need to raise this separate jurisdictional ground for reversal.

Because the underlying dispute has no connection to U.S. commerce, U.S. courts lack jurisdiction to enforce the arbitral award.

**III. Jurisdiction cannot be exercised over Antrix consistent with the constitutional due process limits applied in *Fuld*.**

Even if this Court determined that all requirements for asserting jurisdiction under the FSIA have been met, the arbitral award cannot be enforced against Antrix by the U.S. courts unless that exercise of jurisdiction comports with constitutional due process requirements. *Verlinden B.V.*, 461 U.S. at 491 ("Congress may not expand the jurisdiction of the federal courts beyond the bounds established by the Constitution."). Under *Fuld*, exercising jurisdiction does not comport with constitutional due process because, as this Court has already

16

recognized (Dkt. 105-1 at 7), there is no U.S. connection to this Indian dispute.

As a state-owned corporate entity that is legally separate from India, Antrix remains entitled to due process protections. Op.Br. 22-23, 25-31; Reply 10-18 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984); *Corzo*, 243 F.3d at 525-26).[3] Constitutional due process is thus still owed to Antrix[4]—and exercising jurisdiction to enforce the award still cannot be squared with due process principles because there is no U.S. connection to the dispute. Nothing about the Supreme Court's decision in *Fuld* changes this. The constitutional analysis in *Fuld* is fully aligned with the understanding that there must be a connection between the underlying conduct and the U.S., giving rise to a national interest in adjudicating the dispute, before our courts can

---

[3] *See also Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 65 (2d Cir. 2021) ("[Moldovagaz] may be a foreign corporation that serves as an agency or instrumentality of a foreign sovereign—as the FSIA defines that term—but Gater offers no compelling reason to conclude that while the Fifth Amendment's use of the word 'person' generally includes corporations, it excludes those corporations that have a close relationship with a foreign sovereign.").

[4] This remains true even if Antrix is wrongly viewed as a foreign sovereign. Op.Br. 22-25; Reply 5-10 (cataloguing Ninth Circuit precedent holding foreign states are "persons" under the Fifth Amendment).

haul a foreign entity before them—even one "responsible for carrying out

. . . governmental functions." 606 U.S. at 6.

*Fuld* held the "minimum contacts" analysis required by the Fourteenth Amendment is not required when assessing the federal courts' authority under the Fifth Amendment, *id.* at 16—but it did not dispense with due process. To the contrary, the Court declined to embrace the "unbounded jurisdictional theory" that there are no territorial limits to constitutional due process, and it applied a "reasonableness" test to determine whether exercising jurisdiction under an act that subjects the PLO and Palestinian Authority specifically to federal jurisdiction where they commit or promote terrorism that harms U.S. citizens comported with due process principles. *Id.* at 18, 23-25. While this inquiry is "more flexible" than the minimum contacts analysis, it still envisions that the "assertion of federal jurisdiction" must be "reasonably tie[d] . . . to conduct that involves the United States" such that the U.S. has a "substantial interest in adjudicating the dispute." *Id.* at 16, 24-25.

In *Fuld*, the Supreme Court found a "close connection" to "predicate conduct that . . . bears a meaningful relationship to the United States": terrorist violence against U.S. citizens. *Id.* at 23-24. It explained "the

[U.S.] Government has an exceedingly compelling interest, as part of its comprehensive efforts to deter international terrorism, in providing a forum for American victims to hold the perpetrators of such acts accountable." *Id.* at 24. The U.S. government has no such stake in the resolution of this Indian dispute over the allocation of Indian spectrum and orbital slots. Rather, it is *India* that has the compelling interest in that issue, which directly affects that country's national security and military posture. And unlike the PLO, which was "on clear notice . . . that continuing to engage in" terrorist violence against Americans "would open [it] up to potential federal court jurisdiction," *id.* at 24-25, Antrix had no reason to think that agreeing to arbitrate, in India under Indian law, a contract dispute with another Indian company for Indian space resources would expose it to being sued in U.S. court. Exercising jurisdiction over Antrix to enforce the (null) Indian arbitral award thus would be unreasonable and a violation of Antrix's Fifth Amendment rights.

There is nothing novel about applying these basic due process requirements to disallow the exercise of jurisdiction over foreign entities. *See, e.g., Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480

19

U.S. 102, 113-16 (1987) (applying reasonableness analysis to conclude that in light of the "international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction . . . over Asahi in this instance would be unreasonable and unfair"); *United States v. Medjuck*, 48 F.3d 1107, 1111 (9th Cir. 1995) ("crew members aboard a foreign flag vessel" can only be prosecuted under U.S. drug laws consistent with constitutional due process where there is a "sufficient nexus between the conduct condemned and the United States").

To be sure, the Supreme Court did not "purport to delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. courts" in *Fuld*. 606 U.S. at 18. But it explained there was good reason to be "wary" of petitioners' "maximalist" theory that the Fifth Amendment imposes no limits on federal jurisdiction over foreign entities. This Court similarly should be wary of interpreting the FSIA to allow an exercise of jurisdiction over a foreign company where there is no connection between that company, its dispute with another Indian company, and this nation. Indeed, the avoidance canon squarely applies here because exercising jurisdiction

20

"raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005). Given the Supreme Court's own exercise of discretion in *Fuld*, this Court should decline to reach here the constitutional question not decided there when it can easily dispose of this case on other grounds, reversing either because (a) there is no award to enforce, or (b) the FSIA arbitration exception requires a connection to U.S. commerce. *See id.* (avoidance canon is "a tool for choosing between competing plausible interpretations of a statutory text").

But if the Court reaches this constitutional question, jurisdiction cannot be exercised consistent with Fifth Amendment due process limits because this dispute is not "reasonably tie[d]" to the U.S. and U.S. courts lack a "substantial interest" in resolving it. *Fuld*, 606 U.S. at 16, 24-25.

21

## CONCLUSION

For these reasons and those in Antrix's prior briefs, the Court should reverse the decisions below.

s/ Amanda Shafer Berman
Amanda Shafer Berman
Michael Guiffre
Neil Nandi
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2595
Phone: (202) 624-2500
aberman@crowell.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 20-36024, 22-35103

I am the attorney or self-represented party.

**This brief contains** | 4,182 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

🔘 complies with the length limit designated by court order dated | 8/25/2025 | .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Amanda Shafer Berman | **Date** | 10/9/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*