**Nos. 20-36024(L),
22-35085(M), 22-35103(M)**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DEVAS MULTIMEDIA PRIVATE LIMITED,
*Petitioner-Appellee,*

CC/DEVAS (MAURITIUS) LIMITED; DEVAS MULTIMEDIA AMERICA, INC.;
DEVAS EMPLOYEES MAURITIUS PRIVATE LIMITED;
TELCOM DEVAS MAURITIUS LIMITED,
*Appellees-Intervenors,*

v.

ANTRIX CORP. LTD.,
*Respondent-Appellant.*

*(Captions continued on inside cover)*

On Appeal from the United States District Court
for the Western District of Washington, No. 2:18-cv-01360-TSZ
Hon. Thomas S. Zilly, Senior District Judge

## APPELLEES-INTERVENORS' SUPPLEMENTAL BRIEF

Matthew D. McGill
Amy R. Upshaw
Nicholas A. Mecsas-Faxon
Arka Gupta
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
matthew.mcgill@kslaw.com

*Counsel for Appellees-Intervenors
CC/Devas (Mauritius) Limited; Devas
Multimedia America, Inc.; Devas
Employees Mauritius Private Limited;
Telcom Devas Mauritius Limited*

October 9, 2025

————————————

DEVAS MULTIMEDIA PRIVATE LIMITED,
*Petitioner-Appellant*,

CC/DEVAS (MAURITIUS) LIMITED; TELCOM DEVAS MAURITIUS LIMITED;
DEVAS MULTIMEDIA AMERICA, INC.;
DEVAS EMPLOYEES MAURITIUS PRIVATE LIMITED,
*Intervenor-Plaintiffs-Appellees*,

v.

ANTRIX CORP. LTD.,
*Respondent.*

————————————

DEVAS MULTIMEDIA PRIVATE LIMITED,
*Petitioner*,

and

CC/DEVAS (MAURITIUS) LIMITED; DEVAS MULTIMEDIA AMERICA, INC.;
DEVAS EMPLOYEES MAURITIUS PRIVATE LIMITED;
TELCOM DEVAS MAURITIUS LIMITED,
*Intervenor-Plaintiffs-Appellees*,

v.

ANTRIX CORP. LTD.,
*Respondent-Appellant.*

————————————

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION .......................................................................................... 1

ARGUMENT .................................................................................................. 4

I.    Subject matter jurisdiction exists under the FSIA's arbitration exception and, independently, the waiver exception ..................................................................................... 4

    A.    Arbitration Exception (§ 1605(a)(6)) ....................................... 4

    B.    Independent Ground—Waiver (§ 1605(a)(1)) ......................... 7

II.    *Fuld v. Palestine Liberation Organization* confirms that the FSIA's exercise of personal jurisdiction does not violate the Fifth Amendment ....................................................................... 9

    A.    The FSIA complies with the Fifth Amendment's Due Process Clause ....................................................................... 9

    B.    The Due Process Clause does not protect Antrix because it is not a "person" under the Fifth Amendment ..................................................................... 13

III.    The High Court of Delhi's decision does not render the award unenforceable as a matter of law ....................................... 16

CONCLUSION .............................................................................................. 22

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**

*Abelesz v. Magyar Nemzeti Bank,*
  692 F.3d 661 (7th Cir. 2012).............................................................14

*Ackermann v. Levine,*
  788 F.2d 830 (2d Cir. 1986) ...........................................................17

*Asahi Metal Indus. Co. v. Superior Court,*
  480 U.S. 102 (1987) ........................................................................10

*Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.,*
  191 F.3d 194 (2d Cir. 1999) ...........................................................17

*Bloate v. United States,*
  559 U.S. 196 (2010) ..........................................................................7

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.,*
  145 S. Ct. 1572 (2025).....................................................................14

*Colchester v. Lazaro,*
  16 F.4th 712 (9th Cir. 2021) ...........................................................19

*Compañía de Inversiones Mercantiles S.A.*
  *v. Grupo Cementos de Chihuahua S.A.B. de C.V.,*
  58 F.4th 429 (10th Cir. 2023) ....................................................17, 19

*Corporación Mexicana de Mantenimiento Integral,*
  *S. de R.L. de C.V. v. Pemex-Exploración y Producción,*
  832 F.3d 92 (2d Cir. 2016) ..............................................................17

*Corporacion Mexicana de Servicios Maritimos,*
  *S.A. de C.V. v. M/T Respect,*
  89 F.3d 650 (9th Cir. 1996)...............................................................8

*Devas Multimedia Priv. Ltd. v. Antrix Corp.,*
  91 F.4th 1340 (9th Cir. 2024) .........................................................14

*Fernandez v. Brock,*
840 F.2d 622 (9th Cir. 1988)................................................................16

*First Beverages, Inc. v. Royal Crown Cola Co.,*
612 F.2d 1164 (9th Cir. 1980)..............................................................20

*Fisher v. Roe,*
263 F.3d 906 (9th Cir. 2001)................................................................20

*Frontera Res. Azerbaijan Corp. v. State Oil Co.,*
582 F.3d 393 (2d Cir. 2009) ................................................................14

*Fuld v. Palestine Liberation Org.,*
606 U.S. 1 (2025)........................................................................*passim*

*Gov't Emps. Ins. Co. v. Dizol,*
133 F.3d 1220 (9th Cir. 1998)..............................................................19

*Gregorian v. Izvestia,*
871 F.2d 1515 (9th Cir. 1989)........................................................10, 14

*GSS Grp. Ltd. v. Nat'l Port Auth.,*
680 F.3d 805 (D.C. Cir. 2012) .............................................................15

*Herb's Welding, Inc. v. Gray,*
470 U.S. 414 (1985) .............................................................................7

*Holder v. Humanitarian L. Project,*
561 U.S. 1 (2010).................................................................................11

*Jesner v. Arab Bank, PLC,*
584 U.S. 241 (2018) ............................................................................12

*Mallory v. Norfolk S. Ry. Co.,*
600 U.S. 122 (2023) ............................................................................12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985) ..........................................................................2, 5

*Price v. Socialist People's Libyan Arab Jamahiriya,*
294 F.3d 82 (D.C. Cir. 2002).............................................................14

iii

*Republic of Argentina v. Weltover, Inc.*,
 504 U. S. 607 (1992) ...................................................................... 13

*South Carolina v. Katzenbach*,
 383 U.S. 301 (1966) ...................................................................... 13

*Standard Oil Co. v. United States*,
 429 U.S. 17 (1976) ........................................................................ 20

*Stati v. Republic of Kazakhstan*,
 199 F. Supp. 3d 179 (D.D.C. 2016) ................................................ 8

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
 487 F.3d 928 (D.C. Cir. 2007) ...................................................... 17

*United States v. Rodgers*,
 461 U.S. 677 (1983) ...................................................................... 16

*Verlinden B.V. v. Cent. Bank of Nigeria*,
 461 U.S. 480 (1983) ........................................................................ 7

*Will v. Mich. Dep't of State Police*,
 491 U.S. 58 (1989) ........................................................................ 13

*Youngstown Sheet & Tube Co. v. Sawyer*,
 343 U.S. 579 (1952) ...................................................................... 13

**Statutes**

9 U.S.C. § 1 ...................................................................................... 6

9 U.S.C. § 2 ...................................................................................... 6

9 U.S.C. § 201 *et seq.* ..................................................................... 4

9 U.S.C. § 202 ............................................................................... 6, 7

9 U.S.C. § 402(a) .............................................................................. 5

28 U.S.C. § 1330(b) .......................................................................... 9

28 U.S.C. § 1605(a) .......................................................................... 7

iv

28 U.S.C. § 1605(a)(1) ................................................................ 1, 2, 8

28 U.S.C. § 1605(a)(6) .................................................................. *passim*

28 U.S.C. § 1608 ................................................................................ 9

**Other Authorities**

Baltag, Crina
  *Article V(1)(e) of the New York Convention:*
  *To Enforce or Not to Enforce Set Aside Arbitral Awards?,*
  39 J. of Int'l Arbitration 397 (2022) ..................................................... 18

Brief for Respondent,
  *CC/Devas (Mauritius) Ltd. v. Antrix Corp.,*
  145 S. Ct. 1572 (2025) (No. 23-1201) .................................................. 6

Brief in Opposition,
  *CC/Devas (Mauritius) Ltd. v. Antrix Corp.,*
  145 S. Ct. 1572 (2025) (No. 23-1201) .................................................. 8

Transcript of Oral Argument,
  *CC/Devas (Mauritius) Ltd. v. Antrix Corp.,*
  145 S. Ct. 1572 (2025) (No. 23-1201) .................................................. 5

Constitutionality of Closing the Palestine Info. Off.,
  an Affiliate of the Palestine Liberation Org.,
  11 Op. O.L.C. 104 (1987) ................................................................. 14

*Devas Multimedia Am. Inc. v. Antrix Corp.,*
  No. 200.332.942/01 (Hague Ct. App. Dec. 17, 2024) ............................... 18

N.Y. Convention,
  June 10, 1958, 21 U.S.T. 2517 .......................................................... 16

v

## INTRODUCTION

This brief addresses the three questions this Court directed the parties to answer. *First*, it explains that this Court has subject matter jurisdiction under the arbitration exception in the Foreign Sovereign Immunity Act because the underlying breach-of-contract dispute is "subject matter capable of settlement by arbitration under the laws of the United States," 28 U.S.C. § 1605(a)(6), and, independently, under the FSIA's waiver exception because Antrix failed to timely assert its sovereign immunity, *id.* § 1605(a)(1). *Second*, it explains that, under *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025), Congress's decision in the FSIA to assert personal jurisdiction over particular defendants in specific circumstances is reasonable and consistent with any constitutional constraints. *Third*, it explains that, under the New York Convention, the district court would have discretion to enforce the arbitral award even though the Delhi High Court's set it aside. But here, because the district court entered judgment before the Delhi court ruled, any attack on the judgment based on that ruling should be brought in the district court in the first instance under Rule 60.

**I.** This Court has subject matter jurisdiction. This is an action "to confirm an award made pursuant to" an arbitration agreement governed by a treaty calling for enforcement of the award and "concerning a subject matter capable of settlement by arbitration under the laws of the United States." 28 U.S.C. § 1605(a)(6). Although Antrix now argues that the agreement does *not* concern such a subject matter, Antrix identifies no U.S. law prohibiting breach-of-contract disputes, like this one, from being arbitrable. Without such a statutory exception, subject matter jurisdiction exists. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 639 n.21 (1985). In any event, Antrix's failure to timely assert sovereign immunity provides an independent basis for subject matter jurisdiction under the FSIA's waiver exception. *See* 28 U.S.C. § 1605(a)(1).

**II.** The district court's exercise of personal jurisdiction over Antrix is consistent with the Fifth Amendment's Due Process Clause. The FSIA's command that personal jurisdiction "shall exist" whenever there is lawful service and subject matter jurisdiction under the FSIA is reasonable. Like the statute in *Fuld*, the FSIA ties personal jurisdiction to conduct closely related to the United States—including, as relevant

2

here, the enforcement of U.S. treaty obligations—and implicates important foreign policy concerns. Where the political branches tasked with overseeing foreign affairs have reached consensus on the exercise of jurisdiction over foreign entities, courts should hesitate to interfere. In addition, the exercise of personal jurisdiction is appropriate because Antrix—as an alter ego of a foreign sovereign—has no Fifth Amendment rights.

**III.** The Delhi High Court's decision to set aside the arbitral award does not render that award unenforceable as a matter of law. The New York Convention gives courts discretion to enforce arbitral awards notwithstanding such set-aside orders, and U.S. courts have done so after finding that set-aside proceedings lacked procedural fairness. That is the case here. In any event, Antrix's plea is directed to the wrong court. The district court entered its judgment enforcing the award before the Delhi court issued its set-aside ruling and thus never considered that ruling. That means Antrix's path to relief based on the Delhi set-aside ruling lies not in this Court, but with a Rule 60 motion for relief from the judgment *in the district court.*

This Court should affirm the district court's judgment.

3

## ARGUMENT

**I. Subject matter jurisdiction exists under the FSIA's arbitration exception and, independently, the waiver exception.**

The Court has subject matter jurisdiction under both the FSIA's arbitration and waiver exceptions.

### A. Arbitration Exception (§ 1605(a)(6))

The arbitration exception of the FSIA withdraws immunity from a foreign state in an action "to confirm an award made pursuant to" an arbitration agreement "concerning a subject matter capable of settlement by arbitration under the laws of the United States" whenever the "award is or may be governed by a treaty … calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6). Antrix does not dispute that this action was brought to (1) confirm an award that (2) is governed by a treaty in force in the United States—the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention" or "Convention"). *See* 9 U.S.C. § 201 *et seq.* (implementing Convention). Instead, Antrix now contends that the arbitration agreement here did not "concern[] a subject matter capable of settlement by arbitration under the laws of the United States." 28 U.S.C. § 1605(a)(6). According to Antrix, that statutory clause requires a

4

"substantial connection between the underlying arbitral dispute and the United States." Mot. at 3 (COA No. 22-36024 Dkt. 135).

But Antrix's "substantial connection" test has no footing in the text of the FSIA, and Antrix otherwise is unable to identify any statutory restriction that would prohibit the subject matter here—a breach of contract dispute—from settlement by arbitration. It is the role of Congress, not the courts, to delineate non-arbitrable categories. *See Mitsubishi*, 473 U.S. at 639 n.21 (interpreting same clause under New York Convention as requiring "express congressional language" to establish an "exceptio[n] to arbitrability grounded in domestic law"). For example, federal law bars arbitration of certain "sexual harassment … or sexual assault dispute[s]," 9 U.S.C. § 402(a), so such a dispute would not concern a "subject matter capable of settlement by arbitration under the laws of the United States," 28 U.S.C. § 1605(a)(6). No such statute bars arbitration of the type of claim at issue here. And *Mitsubishi* makes clear that there is no room for "judicially implied exception[s]" that would "subvert the spirit of the United States' accession to the Convention." 473 U.S. at 639 n.21; *see also* Transcript of Oral Argument at 23, *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 145 S. Ct. 1572 (2025) (No. 23-1201) (the

5

U.S. Government agreeing that "for something to not be a subject matter capable of arbitration under U.S. laws, there needs to be something express in U.S. law putting it off bounds, like, for instance, the sexual assault exclusion for certain circumstances under 9 U.S.C. 402").

Nor can Antrix rely on the Federal Arbitration Act's express inclusion of certain arbitration agreements to implicitly exclude others from the FSIA's reach. Antrix observes that an arbitration agreement is enforceable under the FAA when it is part of "a contract evidencing a transaction involving commerce," which is defined to be "commerce within or with the United States." Brief for Respondent at 19, *CC/Devas*, 145 S. Ct. 1572 (No. 23-1201) (citing 9 U.S.C. §§ 1, 2). But Congress did not limit the FSIA's arbitration exception along those lines; instead Congress extended the exception to awards on any "subject matter capable" of arbitration that are governed by an international treaty to which the United States is a party.

And federal law elsewhere confirms that arbitral agreements and awards may be enforceable under the New York Convention, even when they do not fit the definition of "commerce" set forth in 9 U.S.C. § 2. The New York Convention's implementing statute, 9 U.S.C. § 202, sweeps in

6

any arbitral award arising from a "legal relationship … considered as commercial, *including* a transaction, contract, or agreement described in [the FAA, 9 U.S.C. § 2]." 9 U.S.C. § 202 (emphasis added). The "term 'including'" indicates "that the specifically mentioned" item is "not exclusive." *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 423 n.9 (1985); *see also Bloate v. United States*, 559 U.S. 196, 206 (2010) (similar). Section 202's "including" thus shows that the category of arbitral agreements enforceable under the New York Convention includes—but is not limited to—disputes that satisfy the FAA's definition of "commerce."

In the end, Section 1605(a)(6) contains no U.S.-nexus requirement beyond the requirement that the agreement or award be governed by a treaty to which the United States is a party. And courts should not engraft requirements that Congress omitted. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983). The arbitration exception applies.

## B.    Independent Ground—Waiver (§ 1605(a)(1))

Moreover, Antrix waived its immunity. The FSIA provides for subject matter jurisdiction where "the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a). Here,

Antrix failed to raise a sovereign immunity defense in its opposition to the petition to confirm the award before the district court (and its related reply), Dkts. 13, 26 (Dist. Ct.); in its initial and en banc briefing in this Court, Dkts. 40, 67, 116 (COA No. 20-36024); and in its brief in opposition to the petitions for certiorari, Brief in Opposition, *CC/Devas*, 145 S. Ct. 1572 (No. 23-1201). That is sufficient to trigger jurisdiction under § 1605(a)(1). *Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 655 (9th Cir. 1996) (An "implicit waiver[]" of foreign sovereign immunity is "ordinarily found" where the "'foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity.'" (citation omitted)), *as amended on denial of reh'g* (Aug. 28, 1996); *see also Stati v. Republic of Kazakhstan*, 199 F. Supp. 3d 179, 189 (D.D.C. 2016) (finding immunity waived because the foreign state filed "an opposition to the petition [to confirm an arbitral award] and a sur-reply in support of its opposition").

If more were needed, Antrix expressly conceded that "[t]he district court's subject matter jurisdiction was premised on" the FSIA "because Antrix is not immune from an action to confirm a foreign arbitration award under the FSIA's arbitration exception to sovereign immunity."

Antrix AOB at 5-6 (COA No. 22-35103 Dkt. 13). Antrix's acknowledgement before this Court that it was "not immune" from the action is an explicit waiver of immunity. Section 1605(a)(1) provides jurisdiction.

## II. *Fuld v. Palestine Liberation Organization* confirms that the FSIA's exercise of personal jurisdiction does not violate the Fifth Amendment.

The FSIA's exercise of personal jurisdiction over Antrix is consistent with the Fifth Amendment's Due Process Clause and Supreme Court precedent. The FSIA provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief" where an enumerated exception to immunity applies and "where service has been made" under 28 U.S.C. § 1608. 28 U.S.C. § 1330(b). That prescription of personal jurisdiction by Congress does not transgress the Fifth Amendment.

### A. The FSIA complies with the Fifth Amendment's Due Process Clause.

The FSIA's extension of personal jurisdiction is consistent with the Supreme Court's decision in *Fuld v. Palestine Liberation Organization*, 606 U.S. 1 (2025). In *Fuld*, the Supreme Court addressed the Fifth Amendment's Due Process Clause in a challenge to the exercise of personal jurisdiction under the Promoting Security and Justice for

Victims of Terrorism Act ("PSJVTA"). There, the Court "decline[d] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment," reasoning that the Fifth Amendment "necessarily permits a more flexible jurisdictional inquiry" that is "commensurate with the Federal Government's broader sovereign authority." *Id.* at 16. Thus, to the extent this Court's precedent suggests a minimum-contacts requirement might apply in a case like this one, *see Gregorian v. Izvestia*, 871 F.2d 1515, 1528-29 (9th Cir. 1989), *Fuld* clarifies that this is not the case under the governing due-process framework.

The *Fuld* Court did not "delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. Courts." 606 U.S. at 18. Nor did the Court hold that an "inquiry into the reasonableness of the assertion of jurisdiction" was constitutionally required. *Id.* at 23 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987)). But the Court held that "the PS[JV]TA easily" satisfied any reasonableness test. *Id.*

In assessing "[r]easonableness," the Court evaluated "'the interests of the forum State,'" "'the burden on the defendant,'" and the "'plaintiff's interest in obtaining relief.'" *Id.* at 24 (quoting *Asahi*, 480 U.S. at 113).

10

Looking to the interests of the United States as the forum state, the Court observed that the Act "ties federal jurisdiction to conduct closely related to the United States that implicates important foreign policy concerns." *Id.* at 18. Underscoring the interests of the United States, the Act reflected "the political branches' balanced judgment of competing concerns over … 'interests of national security and foreign affairs' and fairness to these particular defendants." *Id.* at 20 (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33-34 (2010)). In evaluating the defendants' burden, the Court concluded that the Palestinian Liberation Organization and Palestinian Authority's burden to appear in court was not unmanageable, particularly where they "operate billion-dollar budgets" and "govern a territory." *Id.* at 24 (quotation marks omitted). And the Court determined that the plaintiffs had a strong interest in pursuing their anti-terrorism claims through U.S. courts. *Id.* at 20.

That analysis leads to the same result here. Like the PSJVTA in *Fuld*, the FSIA hales sovereigns into U.S. courts only in certain scenarios touching upon interests of the United States (those where an immunity exception applies) that both political branches concluded warranted the exercise of jurisdiction. Included among those scenarios are cases in

11

which a plaintiff invokes the United States treaty obligations to enforce international arbitral awards. *See* 28 U.S.C. § 1605(a)(6). The burden on Antrix here is reasonable. Given that India is a signatory to the New York Convention and that Antrix consented to arbitration, it could not "have come as much of a surprise that [they] were haled into U.S. Courts." *Fuld*, 606 U.S. at 24-25.[1] Like the PLO and PA, Antrix, through its parent government, has vast resources and can easily manage to litigate this case, as it has done for years. And Plaintiffs have a strong interest in vindicating their arbitral award that Antrix has refused to pay.

Any decision that would find the FSIA's extension of personal jurisdiction unconstitutional would upset "the political branches' 'delicate judgments' on matters of foreign affairs." *Id.* at 19 (quoting *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 273 (2018)). Where "the Executive and Congress have spoken with one voice in that sphere, their coordinate action is 'supported by the strongest of presumptions and the widest latitude of judicial interpretation, and the burden of persuasion would rest heavily upon any who might attack it.'" *Id.* (quoting

---

[1] Basing personal jurisdiction on consent is consistent with due process. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023) (plurality op.).

12

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring)). Antrix cannot meet that heavy burden here.

**B.    The Due Process Clause does not protect Antrix because it is not a "person" under the Fifth Amendment.**

Antrix, moreover, is the alter ego of a foreign state and is thus not a "person" entitled to protection under the Fifth Amendment's Due Process Clause at all. The Supreme Court has all but squarely held that foreign states are not persons under that Clause. The Court has explained, for example, that, as a matter of "common usage, the term 'person' does not include the sovereign." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (cleaned up). Addressing the Fifth Amendment's Due Process Clause, the Court has held that the word "person" "cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union." *South Carolina v. Katzenbach*, 383 U.S. 301, 323 (1966). And in *Republic of Argentina v. Weltover, Inc.*, the Court cited *Katzenbach*'s holding that States are not persons when it addressed Argentina's Due Process Clause defense. 504 U. S. 607, 619 (1992). The Executive Branch is in accord having concluded long ago that foreign sovereign governments do not "enjoy constitutional rights." *Fuld*, 606

13

U.S. at 28-29 (Thomas, J., concurring) (citing Constitutionality of Closing the Palestine Info. Off., an Affiliate of the Palestine Liberation Org., 11 Op. O.L.C. 104, 107 (1987)).

In the last three decades, "the consensus of circuit courts has followed the Supreme Court's lead and definitively held that foreign states are not entitled to the protections of the Due Process Clause." *Devas Multimedia Priv. Ltd. v. Antrix Corp.*, 91 F.4th 1340, 1350 (9th Cir. 2024) (Bumatay, J., dissenting from denial of rehearing en banc); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 99 (D.C. Cir. 2002); *Frontera Res. Azerbaijan Corp. v. State Oil Co.*, 582 F.3d 393, 399-400 (2d Cir. 2009); *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 694 (7th Cir. 2012). And although this Court in *Gregorian v. Izvestia* concluded that "[p]ersonal jurisdiction under the [FSIA] requires satisfaction of the traditional minimum contacts standard," 871 F.2d at 1529 (quotation marks omitted), the Supreme Court has now squarely rejected that outlier view. *See CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 145 S. Ct. 1572, 1579-82 (2025); *Fuld*, 606 U.S. at 12-16. In any event, this Court in *Gregorian* found that the defendant company had a "separate juridical existence" from the foreign state. 871 F.2d at 1530. So

to the extent its holding remains good law, it is not implicated here, where the litigant has been found to be an alter ego of the sovereign.

The district court found that Antrix is a foreign sovereign and not a "person" for purposes of the Due Process Clause. *See* ER-37. In determining whether an entity should be treated as a foreign sovereign, a court considers whether "a foreign sovereign controls an instrumentality to such a degree that a principal-agent relationship arises between them." *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 815 (D.C. Cir. 2012). The district court found that test easily satisfied. Antrix "is effectively controlled by the Government of India" and thus is indistinguishable from the foreign sovereign itself. ER-37; ER-10. Antrix did not challenge the alter-ego/control finding as clearly erroneous. *See* Antrix AOB at 26-31 (COA No. 20-36024 Dkt. 40). There is thus no basis for disturbing it or the legal conclusion that follows: Antrix is not a person entitled to protection under the Due Process Clause.

* * *

Asserting personal jurisdiction over Antrix here is reasonable. As determined by both political branches in enacting the FSIA, the United States has an interest in enforcing its treaty obligations to further its

15

foreign affairs interests. And Antrix, as the alter ego of India, does not face an unmanageable or unexpected litigation burden. The exercise of personal jurisdiction here thus is consistent with the Fifth Amendment.

### III. The High Court of Delhi's decision does not render the award unenforceable as a matter of law.

**A.** Article V of the New York Convention gives courts discretion to enforce an arbitral award when a foreign court has set the award aside. The text provides that "[r]ecognition and enforcement of the award *may* be refused" where the award "has been set aside." N.Y. Convention art. V(1)(e), June 10, 1958, 21 U.S.T. 2517 (emphasis added). "The word 'may,'" unlike the word shall, "usually implies some degree of discretion." *United States v. Rodgers*, 461 U.S. 677, 706 (1983). As this Court has explained, "'[m]ay' is a permissive word, and we will construe it to vest discretionary power absent a clear indication from the context that Congress used the word in a mandatory sense." *Fernandez v. Brock*, 840 F.2d 622, 632 (9th Cir. 1988).

Courts have repeatedly recognized that the New York Convention affords courts discretion to confirm an arbitral award despite a foreign set-aside decision. "When the prevailing party seeks confirmation and the nonprevailing party presents the defense that the foreign jurisdiction

16

has set the arbitral award aside, the district court must perform a weighing analysis, generally according comity to the foreign annulment order unless doing so violates United States public policy." *Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 58 F.4th 429, 449-50 (10th Cir. 2023). In other words, courts must balance "the goals of comity and res judicata that underlie the doctrine of recognition and enforcement of foreign judgments" with "fairness to litigants" and "fundamental notions of what is decent and just." *Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 106-07 (2d Cir. 2016) (quoting *Ackermann v. Levine*, 788 F.2d 830, 842-43 (2d Cir. 1986)).

Some courts have engaged in that weighing analysis and deferred to the foreign court's annulment order. *See, e.g.*, *Baker Marine (Nig.) Ltd. v. Chevron (Nig.) Ltd.*, 191 F.3d 194, 197 (2d Cir. 1999); *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007). Other courts, however, have enforced arbitral awards, despite a foreign set-aside order. *See Compañía de Inversiones Mercantiles*, 58 F.4th at 458; *Corporación Mexicana de Mantenimiento Integral*, 832 F.3d at 106; *see also* Crina Baltag, *Article V(1)(e) of the New York Convention: To Enforce or Not to*

17

*Enforce Set Aside Arbitral Awards?*, 39 J. of Int'l Arbitration 397, 398, 404 (2022) (noting that courts give deference to foreign set-aside decisions in only about 50% of U.S. proceedings and 34% of such proceedings globally).

India's government-engineered liquidation, its one-sided and hurried process, and the finding of fundamental due-process deficiencies by one respected court place this case comfortably in the latter category. As this Court is aware, after Antrix initiated a proceeding to put Devas into liquidation, Devas was taken over by a Liquidator who then represented Devas in the set-aside proceedings. That Liquidator, an Indian official, acquiesced to Antrix's arguments and acted in the Indian government's, rather than Devas's shareholders', best interests. Reviewing these proceedings, the Court of Appeal of the Hague held that the ruling appointing the Liquidator "cannot be recognized" in the Netherlands "because the requirements of due process and sufficient safeguards were not met." *Devas Multimedia Am. Inc. v. Antrix Corp.*, No. 200.332.942/01 ¶¶ 6.49-6.50 (Hague Ct. App. Dec. 17, 2024).[2] And the

---

[2] *Available at* https://tinyurl.com/ys32wae6 (translated from Dutch to English).

court further held that "the annulment ruling"—that is, the set-aside order—"cannot be recognized" either because it "builds on the liquidation ruling" and "is thus also tainted with the fundamental defect that clings to the liquidation ruling." *Id.* That decision is correct, and enforcement of the arbitral award here is appropriate.

**B.** Because refusal to enforce an award is a discretionary decision informed by the facts at issue, the district court must be afforded the opportunity to consider the matter in the first instance, including whether Antrix has forfeited the argument. Determining whether to enforce an arbitral award after a set-aside order requires balancing "comity considerations" with "(1) whether the annulment is repugnant to U.S. public policy or (2) whether giving effect to the annulment would undermine U.S. public policy." *Compañía de Inversiones Mercantiles*, 58 F.4th at 454. This requires the exercise of "discretion," which is typically "vested in the district courts, rather than with appellate judges." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998); *Colchester v. Lazaro*, 16 F.4th 712, 725 (9th Cir. 2021) ("[A]buse of discretion review requires that the appellate court be able to ascertain how the district court exercised its discretion." (quotation marks omitted)). And it

19

requires the court to examine the set-aside proceedings and find relevant facts. But "[t]rial courts find facts. [Appellate courts] do not." *Fisher v. Roe*, 263 F.3d 906, 912 (9th Cir. 2001), *overruled on other grounds by Payton v. Woodford*, 346 F.3d 1204 (9th Cir. 2003) (en banc).

The district court here has not had the chance to weigh these facts and exercise its discretion because the Delhi court issued its set-aside ruling *after* the district court's decision. Where, as here, new "circumstances surrounding the case" have arisen while an appeal is pending, "[t]he proper approach … would be to make a Rule 60(b) motion or a motion to reopen to hear additional proof." *First Beverages, Inc. v. Royal Crown Cola Co.*, 612 F.2d 1164, 1172 (9th Cir. 1980). "Such motions must be directed in the first instance to the district court." *Id.* (declining to remand for consideration of developments because no Rule 60 motion had been made). Antrix has not sought relief from the judgment under Rule 60 of the Federal Rules of Civil Procedure on that basis (or an indicative ruling under Rule 62.1 as to whether the district court would grant such relief). *See* Intervenor's Opp. Motion for Remand at 1-3 (COA No. 20-36024 Dkt. 74); *cf. Standard Oil Co. v. United States*, 429 U.S. 17, 18-19 (1976) (explaining that when a district court addresses a

20

Rule 60(b) motion after an appeal it "is not flouting the mandate by acting on the motion" because "the appellate mandate relates to the record and issues then before the courts, and does not purport to deal with possible later events").

If Antrix intends to argue that the High Court of Delhi's decision setting aside the underlying arbitral award renders the award unenforceable, it must make that argument to the district court in the first instance by seeking relief from the judgment under Rule 60, where the district court could then treat the set-aside decision as part of its comity considerations. Here, because the district court's judgment on the record before it is correct, this Court should affirm the judgment.

21

## CONCLUSION

For the reasons set forth above, this Court should affirm the judgment confirming the arbitral award.

Respectfully submitted,

*s/Matthew D. McGill*
Matthew D. McGill
Amy R. Upshaw
Nicholas A. Mecsas-Faxon
Arka Gupta
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
matthew.mcgill@kslaw.com

*Counsel for Appellees-Intervenors*
*CC/Devas (Mauritius) Limited;*
*Devas Multimedia America, Inc.;*
*Devas Employees Mauritius Private*
*Limited; Telcom Devas Mauritius*
*Limited*

October 9, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure Rule 32(a)(7)(C), I certify that this brief complies with the length limitations set forth in this Court's August 25, 2025 Order, because it contains 4,195 words, as counted by Microsoft Word, excluding the items that may be excluded under Rule 32(a)(7)(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Word 365ProPlus in Century Schoolbook 14-point font.

Date: October 9, 2025

*s/Matthew D. McGill*
Matthew D. McGill

*Counsel for Appellees-Intervenors
CC/Devas (Mauritius) Limited;
Devas Multimedia America, Inc.;
Devas Employees Mauritius
Private Limited; Telcom Devas
Mauritius Limited*
